UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALI CISSE,

                                                Plaintiff,

                                                                                     Case # 22-CV-6071-FPG

v.

                                                                                     DECISION AND ORDER

ANTHONY J. ANNUCCI, *et al.*,

                                             Defendants.
_____

## INTRODUCTION

Plaintiff Ali Cisse brings this civil rights action against Defendants Corrections Officer Ryan Setlock, Corrections Officer Matthew Wilson, Sgt. Andrew Rapini, Assistant Commissioner Robert Mitchell, and Sgt. Pungross Carroll, Jr., pursuant to 42 U.S.C. § 1983. ECF No. 14. Defendants move for summary judgment on all of Plaintiff's claims. ECF No. 55. Plaintiff does not oppose the motion. For the reasons that follow, Defendants' motion for summary judgment (ECF No. 55) is GRANTED IN PART AND DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party

1

"may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

"Where, as here, a summary judgment motion is unopposed, uncontroverted facts in the moving party's statement pursuant to Local Rule 56.1 are deemed admitted." *Siler v. Walden*, No. 20-CV-05794, 2023 WL 3871999, at *4 (S.D.N.Y. June 7, 2023), *reconsideration denied*, 2023 WL 5152701 (July 21, 2023); *see also Fate v. Petranker*, No. 19-CV-5519, 2022 WL 2672317, at *1 (S.D.N.Y. July 8, 2022) ("Statements made by [d]efendant that are supported by admissible evidence and not refuted by [p]laintiff are deemed admitted."). Nevertheless, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014); *Oliver v. Gilmore*, No. 13-CV-490, 2014 WL 6387352, at *4 (W.D.N.Y. Nov. 14, 2014) ("This Court cannot automatically grant summary judgment merely upon an opponent's failure to respond to a movant's statement of material facts, but if the record supports the unopposed statements of fact, summary judgment is appropriate.").

Moreover, *pro se* litigants "must be given extra latitude, particularly on a summary judgment motion." *Barrett v. Moody*, No. 19-CV-190, 2023 WL 2898310, at *6 (W.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, 2023 WL 2898659 (Apr. 10, 2023) (internal quotation marks omitted); *Coley-Allen v. Strong Health*, 828 F. Supp. 2d 582, 584–85 (W.D.N.Y. 2011) ("While the motion is unopposed, the Court has nonetheless examined the record in detail,

2

remaining mindful of the standards relevant to deciding a motion for summary judgment, and granting plaintiff every favorable inference as a *pro se* litigant, and as a non-movant."). "[A]n unopposed summary judgment motion in a *pro se* action may be granted where (1) the *pro se* litigant has received adequate notice that failure to file any opposition may result in the entry of summary judgment without trial,[1] and (2) the court is satisfied that 'the facts as to which there is no genuine dispute show that the moving party is entitled to summary judgment as a matter of law.'" *Taylor v. Consol. Rail Corp.*, 166 F. Supp. 2d 652, 654 (N.D.N.Y. 2001) (quoting *Champion v. Artuz,* 76 F.3d 483, 485 (2d Cir. 1996)); *Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 10 (2d Cir. 2019) (summary order) ("Where a motion for summary judgment is unopposed, summary judgment is proper only if the court is satisfied that the moving party has met its burden with sufficient support in the record evidence.").

## BACKGROUND

### I.  The Material Facts are Undisputed

In this case, Defendants served their Motion for Summary Judgment on Plaintiff, which included a Rule 56 Statement of Undisputed Facts and a "Notice to Pro Se Litigant Regarding Rule 56 Motion for Summary Judgment" to alert Plaintiff to the procedural requirements of summary judgment motions and the consequences of not responding. ECF No. 55-20. In addition, the

---

[1] The Court here informed Plaintiff of the deadline to file a response and that failure would result in the motion being deemed unopposed and his complaint potentially being dismissed without trial. ECF No. 56. This order was mailed to Plaintiff. *Id*. The Court is thus satisfied that Plaintiff has received adequate notice of the consequences of non-opposition to the motion for summary judgment. *Jackson v. Jackson*, No. 16-CV-08516, 2021 WL 981849, at *5 (S.D.N.Y. Mar. 16, 2021) (finding adequate notice where *pro se* plaintiff "was warned that failure to file an opposition would result in the [c]ourt concluding that the motion was unopposed"); *Taylor v. Consol. Rail Corp.*, 166 F. Supp. 2d 652, 654 (N.D.N.Y. 2001) (finding sufficient notice where the court "thoroughly explained both the procedures plaintiff should follow if he wished to proceed *pro se* and oppose the summary judgment motion, and the consequences that would result if plaintiff failed to timely submit opposition papers").

3

Court's Scheduling Order advised Plaintiff of the consequences of not responding to Defendants' Motion. ECF No. 56.

Despite this, Plaintiff failed to file an opposing statement contesting Defendants' Statement of Undisputed Facts or otherwise respond to the motion. Having reviewed Defendants' Statement and found it satisfactory, *see Jackson*, 766 F.3d at 195, the Court adopts Defendants' Rule 56 Statement as the undisputed facts of the case. *See Xerox Corp. v. Southwest Direct, Inc.*, No. 15-CV-6245, 2016 WL 3766425, at *2 (W.D.N.Y. July 8, 2016) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)).

## II. Undisputed Facts of the Case

Among the evidence proffered by the parties is video footage—taken by prison cameras—of the encounter between Plaintiff, Wilson, and Setlock. Video footage can, but does not always, conclusively establish facts for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 379–80 (2007); *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017). Where a videotape "leaves no doubt as to what occurred," *United States v. Paul*, 904 F.3d 200, 203 (2d Cir. 2018), a district court need not countenance contrary factual assertions, *see Scott*, 550 U.S. at 380; *Heicklen v. Toala*, No. 08-CV-2457, 2010 WL 565426, at *2 (S.D.N.Y. Feb. 18, 2010).

Conversely, if the video evidence is "ambiguous" or otherwise inconclusive, *Hicks v. Vill. of Ossining*, No. 12-CV-6874, 2016 WL 345582, at *5 (S.D.N.Y. Jan. 27, 2016), a court must employ its usual summary judgment standards and construe the evidence in the non-moving party's favor, *accord Hulett*, 253 F. Supp. 3d at 482 ("[W]hile the video evidence submitted by the parties will certainly be considered and carefully reviewed at this juncture, . . . summary adjudication of a plaintiff's civil rights claim [is permitted] only in those exceptional cases where the video evidence in the record is sufficient to blatantly contradict one party's version of events." (internal quotation marks and brackets omitted)).

4

On March 17, 2019, Plaintiff was incarcerated at Attica Correctional Facility. ECF No. 55-2 ¶ 2. Corrections Officers Setlock and Wilson were both employed at Attica Correctional Facility at the time. *Id.* ¶¶ 3–4. On that day, Setlock was ordered to conduct a random search of Plaintiff's cell, and Wilson was ordered to assist him. *Id.* Cell searches are conducted daily at Attica Correctional Facility, and the cell numbers to be searched are provided by the Department of Corrections and Community Supervision (DOCCS), which determines the numbers at random. *Id.* ¶ 5. Prior to the incident at issue, Plaintiff did not know Setlock or Wilson. *Id.* ¶¶ 8–9.

Video footage from Attica Correctional Facility shows the search of Plaintiff's cell and the events following it. Defs. Ex. D. The footage starts with Setlock patting down Plaintiff as Wilson watches. *Id.* 00:01–00:05. Setlock then enters Plaintiff's cell. *Id.* 00:06. About six and a half minutes later, Setlock removes a hot pot from the cell. *Id.* 06:32. Plaintiff then begins a conversation with Wilson about the hot pot. *Id.* 06:35. Plaintiff asks to speak to a sergeant, and Wilson informs Plaintiff that he can speak to a sergeant later. *Id.* 06:57–07:07.

The search continues and eventually, Setlock emerges from the cell. *Id.* 12:56. Plaintiff then repeats his request to speak to a sergeant. *Id.* 13:02. Wilson then repeatedly tells Plaintiff to "turn and put your hands on the wall" to which Plaintiff repeatedly responds, "I want to speak to the sergeant." *Id.* 13:02–13:19. Wilson then puts his hands on Plaintiff's shoulders and attempts to turn Plaintiff around. *Id.* 13:19–13:26. Plaintiff resists Wilson's attempts to turn him around. *Id.* Finally, Wilson states, "turn and put your hands on the wall" again to which Plaintiff responds "no." *Id.* 13:26–13:28.

At this point, Wilson attempts to turn Plaintiff around again and they both fall to the floor. *Id.* 13:29. As they are falling over, Plaintiff attempts to hit Wilson with his knee. *Id.* 13:30. Wilson and Setlock then attempt to restrain Plaintiff, but Plaintiff continues to resist and repeatedly throws

5

punches at Wilson and Setlock. *Id.* 13:30–13:56. While Wilson and Setlock are struggling with Plaintiff, Wilson sprays Plaintiff with pepper spray. *Id.* 13:56–13:58. After about thirty seconds, multiple corrections officers come to assist Wilson and Setlock. *Id.* 13:58. The officers continue to struggle with Plaintiff and force him to the ground. Once he is on the ground, multiple officers strike Plaintiff, some using batons. *Id.* 13:58–14:58. Eventually, Plaintiff is handcuffed and escorted out of the video frame by officers. *Id.* 14:58–15:16.

Following the altercation, Sgt. Rapini prepared a misbehavior report detailing the incident. ECF No. 55-2 ¶ 15. Rapini's report was based upon his review of the use of force reports and his viewing of the video of the altercation. *Id.* Prior to this incident, Rapini had no knowledge of Plaintiff or that he had filed grievances. *Id.* ¶ 14. After Rapini prepared the misbehavior report, Captain Mitchell held a hearing about Plaintiff's behavior during the incident. *Id.* ¶ 32. At the hearing, Mitchell called witnesses including three inmates, Setlock, Wilson, Rapini, and Plaintiff. *Id.* ¶ 34. Mitchell also reviewed the video of the incident. *Id.*

Ultimately, Mitchell found Plaintiff guilty of the following charges: creating a disturbance, violent conduct, assault on staff, interference with an employee, refusing a direct order, and a movement regulation violation. *Id.* ¶ 36. Mitchell documented the steps he took during the hearing process and provided a written explanation of the basis for his decision. *Id.* ¶ 35. Mitchell recommended the following penalties: 365 days in the Special Housing Unit (the "SHU"), no packages for 365 days, no recreation for 365 days, no commissary for 365 days, no phone for 365 days, and loss of twelve months of good time. *Id.* ¶ 37. Attica Correctional Facility Superintendent Julie Wolcott reviewed the case and reduced Plaintiff's time in the SHU to 270 days to comply with standard guidelines. *Id.* ¶ 38. After the incident, Plaintiff was housed in the SHU. *See id.* ¶ 39. While Plaintiff was in the SHU, he complained to Sgt. Carroll about his bed sheets. *Id.* At the

time Plaintiff was housed in the SHU, inmates could send their clothing or shirts to be laundered, and the laundry would be returned the same day. *Id.* ¶ 40.

On February 10, 2022, Plaintiff brought the instant action in this Court. ECF No. 1. On August 15, 2022, Plaintiff amended his complaint. ECF No. 14. In his amended complaint, Plaintiff alleged various civil rights violations against a number of Defendants. *Id.* After screening the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court allowed the following claims to proceed to service: (1) the excessive force claim against Wilson and Setlock; (2) the retaliation claim against Wilson and Setlock; (3) the retaliation claim against Rapini; (4) the due process claim against Rapini; (5) the cell search claim against Rapini; (6) the due process claim against Mitchell; and (7) the conditions of confinement claim against Caroll. ECF No. 15. On September 20, 2024, Defendants moved for summary judgment on all of Plaintiff's claims. ECF No. 55. Despite being warned of the consequences, Plaintiff did not respond to the motion. *See* ECF Nos. 55-20, 56.

## DISSCUSSION

Defendants have moved for summary judgment on all of Plaintiff's claims. ECF No. 55. The Court discusses each claim below.

**I.      Excessive Force Claim Against Setlock and Wilson**

Plaintiff argues that on March 17, 2019, after he requested to speak to a sergeant, Setlock and Wilson violated his Eighth Amendment rights by using excessive force against him. ECF No. 14 at 3–4. To determine whether prison officials used excessive force in violation of the Eighth Amendment, the Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To succeed on such a claim, a plaintiff must prove objective and subjective elements. *Id.* at 7–8.

The objective element is "contextual and responsive to contemporary standards of decency," *id.* at 8–9 (quotation and citation omitted), and requires that "the injury actually inflicted . . . [is] sufficiently serious to warrant Eighth Amendment protection," *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). Thus, the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (quotation marks and citation omitted). Consequently, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9 (citation omitted).

The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quotation marks and citations omitted). When assessing whether prison officials unnecessarily and wantonly inflicted pain on an inmate, the trier of fact considers: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). If after considering these factors, the trier of fact determines that "the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied." *Id.*

Setlock and Wilson argue that they are entitled to summary judgment on this claim because force was applied in a good faith effort to restore and maintain discipline and there is no proof that Setlock or Wilson acted sadistically or maliciously. ECF No. 55-21 at 7. The Court agrees.

First, as for Plaintiff's injuries, he testified at his deposition that he sustained a wound on his left elbow, wounds on his back, bruises on the middle section of his lower back, that his vision was blurry for some time after the incident, and that he suffers from lower back pain. ECF No. 55-12 at 73. While these injuries are relatively minor, any injury can constitute a violation of the Eighth Amendment. *Hudson,* 503 U.S. at 4; s*ee also Romaine v. Rawson*, 140 F. Supp. 2d 204 (N.D.N.Y. 2001) (holding that even *de minimis* use of force violates the Eighth Amendment where all parties admit that force was not necessary). Thus, the lack of any serious injury here is relevant but not dispositive, and the Court must consider the remaining factors. *See Kalwasinski v. Artuz,* No. 02 CV 2582, 2003 WL 22973420, at *4 (S.D.N.Y. Dec. 18, 2003).

Second, the Court must consider the need for the application of force. The video shows Wilson repeatedly giving Plaintiff a direct order to turn around and put his hands behind his back, which Plaintiff refuses to do. Defs. Ex. D 13:02–13:28. After Plaintiff explicitly says no to the direct order, Wilson attempts to turn Plaintiff around. *Id.* At this point, Plaintiff begins actively resisting and starts to attack Wilson and Setlock, throwing multiple punches and refusing to comply as officers attempt to restrain him. *Id.* 13:30–13:56. When more officers arrive to help Wilson and Setlock, Plaintiff continues to resist their attempts to handcuff him.[2] Under such circumstances, a reasonable fact finder would be compelled to conclude Wilson's and Setlock's application of force was necessary to restore order. *See Kalwasinski,* 2003 WL 22973420, at *4 (holding that no reasonable jury could find that a defendant lacked a good faith belief that the

---

[2] While the video footage clearly depicts most of the incident, towards the end of video, when Plaintiff is on the ground, the footage is not clear as to whether Plaintiff continues to defy direct orders to place his hands behind his back. Defs. Ex. D 14:13–14:25. During this time, Wilson is seen striking Plaintiff in the upper part of his body. *Id.* 14:16. Because the video footage is inconclusive as to whether Plaintiff was defying a direct order when Wilson struck him, the Court turns to other evidence in the record. Wilson's Use of Force Report states that he struck Plaintiff in the shoulder because he continued to resist officers' orders to put his hands behind his back. ECF No. 55-6 at 4. Plaintiff has provided no evidence to counter Wilson's statement as to his use of force. As such, there is no dispute of fact that Wilson struck Plaintiff while Plaintiff was refusing to comply with a direct order.

9

application of force was necessary to restore order where the plaintiff refused a direct order from a prison official and pinned that official on the ground). This is especially true in light of the principle that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22.

Third, a reasonable fact finder would be compelled to conclude that the amount of force actually used was commensurate with the need for force. In this case, Plaintiff refused a direct order, punched officers, and continued to resist as officers attempted to get him to comply with the order. In response, Wilson used pepper spray and struck Plaintiff with his hand at least three times in an attempt to gain control over the situation. ECF No. 55-6 at 4; Defs. Ex. D 13:02–15:16. Setlock, at most, pushed Plaintiff to the ground, used his arms/body to restrain Plaintiff, and struck Plaintiff with his hand.[3] Defs. Ex. D 13:02–15:16. Under these circumstances, the need to maintain prison order warranted the minimal amount of force used. *See Brown v. Busch*, 954 F. Supp. 588, 594 (W.D.N.Y.1997) (determining that prison officials had not used excessive force against an inmate, where officials forced the inmate back into his cell by allegedly pushing, shoving, and striking him after the inmate had refused a direct order); *Kalwasinski*, 2003 WL 22973420, at *4 (finding that the use of force was proportional where, after an inmate refused a direct order and pinned an officer on the ground, prison officials threw the inmate head first into a room, causing the his head to strike a wall and bench); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

---

[3] While the video shows other officers striking Plaintiff with batons, neither Wilson nor Setlock used a baton to strike Plaintiff. *See* Defs. Ex. D 13:02–15:16. Because the other officers are not parties to this action, the Court does not consider their actions when determining whether Wilson and Setlock used excessive force.

Fourth, a reasonable fact finder would be compelled to conclude that a threat was reasonably perceived by Wilson and Setlock. Plaintiff initially refused a direct order, which is a threat to the security of the prison. *See Kalwasinski,* 2003 WL 22973420, at *3 ("The threat to prison security would be manifest were we to allow inmates to decide for themselves which orders to obey and which to ignore as violative of their rights and to act accordingly." (quotation omitted)). Then, after Wilson attempted to turn Plaintiff around, Plaintiff began to attack Wilson and Setlock, throwing multiple punches. Defs. Ex. D 13:39–14:40. Further, it took multiple officers to get Plaintiff to the ground and handcuffed. *Id.* Under these circumstances, no reasonable juror could conclude that Wilson and Setlock did not reasonably perceive that Plaintiff's actions were a threat to themselves and prison security.

Finally, a reasonable fact finder would be compelled to conclude that efforts were made to temper the severity of a forceful response. It is undisputed that once Plaintiff was handcuffed, neither Wilson nor Setlock used force on him. *Id.* 14:58–15:16; ECF No. 55-6 at 2. As such, Wilson and Setlock only used force to the extent necessary to remove the threat. *See Heyliger v. Krygier*, 335 F. Supp. 3d 482, 494 (W.D.N.Y. 2018) (finding that a defendant used efforts to temper the severity of a forceful response because he only used force to the extent necessary to remove the threat).

Therefore, after considering each of the relevant factors and viewing the evidence in the light most favorable to Plaintiff, the Court concludes that no reasonable juror could conclude that Wilson or Setlock violated Plaintiff's Eighth Amendment rights. There is no genuine dispute of fact as to what occurred, and it is clear from the evidence that the force used was applied in a good faith effort to maintain or restore discipline. *See Hudson,* 503 U.S. at 7; *see also Heyliger*, 335 F. Supp. 3d at 494 ("Summary judgment on an Eighth Amendment excessive force claim is

appropriate where a plaintiff cannot show the defendant 'used any degree of force that was more than necessary to effect' his lawful objective." (quoting *Faruki v. City of New York.*, 517 F. App'x 1, 2 (2d Cir. 2013))). Accordingly, Wilson and Setlock are entitled to summary judgment on Plaintiff's excessive force claim.

**II.     Retaliation Claim Against Rapini**

Plaintiff argues that in retaliation for Plaintiff filing grievances against corrections officers, Rapini "authorized" Wilson and Setlock to search Plaintiff's cell. ECF No. 14 at 5. After the search, Plaintiff alleges that Rapini retaliated against him again by filing an "embellished" misbehavior report and by giving false testimony at the hearing that adjudicated the embellished report. *Id.* at 5–6.

"To sustain a claim for retaliation in violation of the First Amendment under § 1983, a prisoner must demonstrate (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (internal quotation omitted). Here, Plaintiff claims that Rapini retaliated against him due to grievances he had previously filed. ECF No. 14 at 5–6. Rapini does not dispute that the filing of grievances is protected speech and therefore, the first prong is met. ECF No. 55-21 at 9. Nevertheless, Plaintiff's claim fails because even if the Court were to assume that the cell search and allegedly embellished misbehavior report constitute adverse action, Plaintiff has proffered no evidence that there was a causal connection between the protected speech and the adverse action.

To meet the third prong, the causal connection between the protected conduct and adverse action must support an inference that the protected conduct was "a substantial or motivating factor for the adverse actions taken by prison officials." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir.

2012) (summary order) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). In this case, Rapini has testified that prior to the incident at issue, he had no knowledge of Plaintiff or that Plaintiff had filed grievances. ECF No. 55-17 ¶ 6. He argues that because he had no knowledge of Plaintiff or the grievances, he could not have retaliated against Plaintiff for filing such grievances. ECF No. 55-21 at 9. Plaintiff has provided no evidence that Rapini knew of him prior to the incident or that Rapini was aware of the grievances. As such, there is no dispute that Rapini was unaware of the grievances prior to the cell search and writing the misbehavior report and therefore, the grievances could not have been a substantial or motivating factor for the cell search or report. Consequently, Plaintiff has failed to show that there was a causal connection between the protected conduct and any adverse action, and the Court concludes that Rapini is entitled to summary judgment on this claim.

### III. Due Process Claim Against Mitchell

Plaintiff argues that Mitchell failed to conduct a fair and impartial hearing related to the incident at issue. ECF No. 14 at 6. Specifically, Plaintiff maintains that Mitchell was biased and failed to consider exculpatory evidence when making his decision. *Id.* Plaintiff further alleges that Mitchell tampered with the tape of the hearing by recording over parts, which Plaintiff argues impaired his rights on appeal and led to the commissioner affirming Mitchell's disposition. *Id.* When this Court initially screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, it found that Plaintiff's due process claim against Mitchell could proceed to service due to Plaintiff's allegation that Mitchell tampered with the hearing record, which suggested that Mitchell was not an impartial officer. ECF No. 9 at 12.

Mitchell contends that he conducted a fair hearing and that he followed the policies and procedures as specified by DOCCS. ECF No. 55-21 at 9–10. He also maintains that there is no

evidence to support Plaintiff's allegations that he was biased. *Id.* at 9. Plaintiff has provided no evidence that Mitchell was biased or that Mitchell tampered with the hearing tape, which was the basis upon which this Court allowed the claim to proceed to service. Consequently, the Court concludes that Mitchell is entitled to summary judgment on Plaintiff's due process claim.

### IV.   Conditions of Confinement Claim Against Carroll

Plaintiff argues that Carroll violated his Eighth Amendment rights when he failed to provide clean sheets to Plaintiff after Plaintiff complained that his sheets were contaminated. ECF No. 14 at 5. Specifically, Plaintiff alleges that after he was pepper sprayed on March 17, 2019, he was not allowed to properly decontaminate and therefore, his sheets were contaminated with pepper spray. *Id.* at 4–5. Plaintiff maintains that he informed Superintendent Joseph Noeth about the issue and that Noeth instructed Carroll to address the issue. *Id.* Plaintiff claims that Carroll told him that a corrections officer would come with new sheets, but a corrections officer never came with new sheets. *Id.* at 5. Plaintiff further alleges that he spoke with Carroll a few days later and asked him about the sheets again. *Id.* Plaintiff claims that Carroll responded that Plaintiff should put the sheets in the laundry. *Id.* Plaintiff claims that in response to that statement, Plaintiff informed Carroll that if he put the sheets in the laundry, he would have no sheets for two days and that he would need a blanket exchange because he could not put them in the laundry. *Id.* Plaintiff alleges that Caroll responded "I don't know what to tell you" before walking away. *Id.*

To establish an Eighth Amendment violation based on the conditions of confinement a Plaintiff must show: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991); *see also Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996). Carroll argues that Plaintiff has failed to meet the either prong

of the conditions of confinement test. ECF No. 55-21 at 11. However, the Court need not address Carroll's arguments related to the first prong, because even assuming that sleeping on contaminated sheets is sufficiently serious, Plaintiff's claim fails under the second prong.

The second prong of the conditions of confinement test goes to the prison official's "culpable state of mind," *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) and is one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "The charged official must be subjectively aware that his conduct creates such a risk." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). A prison official's knowledge of a substantial risk of serious harm may be inferred from circumstantial evidence that "the risk was obvious." *Farmer*, 511 U.S. at 842. Conversely, "[p]rison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger" or that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. Therefore, a plaintiff is not required to show that a defendant acted or failed act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference." *Porter v. Young*, No. 11-CV-0848, 2013 WL 4080602, at *6 (N.D.N.Y Apr. 13, 2013) (quotation omitted).

Here, Carroll testified that it was his understanding that if Plaintiff's sheets were contaminated, then Plaintiff could send them to the laundry and have them returned in one day. ECF No. 55-15 ¶ 9. As such, Carroll argues that he was unaware of the existence of any substantial risk of serious harm to Plaintiff that could result from his failure to provide new sheets because he

believed that Plaintiff could rectify the problem himself. ECF No. 55-21 at 13. Plaintiff has provided no evidence to counter Carroll's testimony that he believed Plaintiff could send his sheets to the laundry and have them returned in one day. Consequently, the Court concludes that Plaintiff has failed to show that Carroll acted with deliberate indifference, and that Carroll is entitled to summary judgment on Plaintiff's conditions of confinement claim.

### V. Qualified Immunity

Alternatively, Defendants argue that they are entitled to qualified immunity as to each claim. The Court rejects this argument. The doctrine of qualified immunity shields government officials from civil damages liability unless "the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Here, each Defendant argues that he is entitled to qualified immunity because he stated in his declaration that he did not know that his actions constituted a violation of the Constitution. ECF No. 55-21 at 14. Because this argument fails to address whether the facts of the instant case make out a violation of a constitutional right or whether the right at issue was clearly established

at the time of the alleged misconduct, the Court concludes that Defendants are not entitled to qualified immunity on this basis.

## VI. Remaining Claims

In addition to the claims discussed above, in its order screening Plaintiff's amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court allowed the following claims to proceed to service: (1) the retaliation claim against Wilson and Setlock; (2) due process claim against Rapini; and (3) the cell search claim against Rapini. ECF No. 15. While Defendants purport to move for summary judgment on all of Plaintiff's claims, Defendants' motion fails to provide any substantive arguments as to why they are entitled to summary judgment on the retaliation claim against Wilson and Setlock, the due process claim against Rapini, and the cell search claim against Rapini. Absent any substantive arguments, the Court cannot evaluate whether Defendants are entitled to summary judgment on those claims. Consequently, to the extent Defendants' motion seeks summary judgment as to the retaliation claim against Wilson and Setlock, the due process claim against Rapini, and the cell search claim against Rapini, it is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 55) is GRANTED IN PART AND DENIED IN PART. Plaintiff's excessive force claim against Wilson and Setlock, retaliation claim against Rapini, due process claim against Mitchell, and conditions of confinement claim against Carroll are DISMISSED. The Clerk of Court is directed to dismiss Assistant Commissioner Robert Mitchell and Sgt. Pungross Carroll, Jr., as Defendants in this action.

At this time, this case is in an unusual posture. Defendants have purported to move for summary judgment on all claims but have failed to address three of Plaintiff's claims. Further,

Plaintiff has failed to oppose or otherwise respond to Defendants' motion. As such, the Court directs the parties to submit supplemental letters to the Court about the status of this action **by October 1, 2025.** Defendants are directed to inform the Court whether they believe that they can plausibly move for summary judgment on Plaintiff's remaining claims. Plaintiff is directed to inform the Court if he wishes to proceed with prosecuting this action in light of this decision dismissing four of his claims. Plaintiff is warned that if he fails to submit a written response to the Court by **October 1, 2025,** the Court may treat his noncompliance as a failure to prosecute and may dismiss this action with prejudice pursuant to Rule 41(b). *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The district court [] has the power under Fed.R.Civ.P. 41(b) to dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute.").

    IT IS SO ORDERED.

Dated: September 3, 2025
       Rochester, New York

                                              HON. FRANK P. GERACI, JR.
                                              United States District Judge
                                              Western District of New York